# United States District Court

| SOUTHERN | DISTRICT OF | MISSISSIPPI |

JACKSON DIVISION

UNITED STATES OF AMERICA

v.

THE COUNTRY CLUB OF JACKSON, MISSISSIPPI

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 3:08mj109-LRA

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __September 13, 2006__ in __Hinds__ County, in the __Southern__ District of __Mississippi__ Defendant(s) did, *(Track Statutory Language of Offense)* knowingly hire and continue to employ illegal aliens knowing such aliens were unauthorized aliens with respect to such employment

in violation of Title __8__ United States Code, Section (s) __1324a(a)(2)__

and did willfully, knowingly and with intent to deceive the Social Security Administration as to the identity of another person, furnish or cause to be furnished false information to the Commissioner of Social Security with respect to information required by the Commissioner of Social Security in connection with the establishment and maintenance of the records

in violation of Title __42__ United States Code, Section (s) __408(a)(6)__

I further state that I am a(n) __Special Agent, with U.S. Immigration and Customs Enforcement__ and that this complaint is based on the following facts:

**SEE ATTACHED AFFIDAVIT**

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

_Stephen E. Cole_
Signature of Complainant

Sworn to before me and subscribed in my presence,

__February 6, 2008__ at __Jackson, Mississippi__
Date                                                                 City and State

Linda R. Anderson, United States Magistrate Judge
Name and Title of Judicial Officer

_Linda R. Anderson_
Signature of Judicial Officer

## AFFIDAVIT

I, Stephen E. Cole, being duly sworn, do hereby depose and state the following:

I am employed as a Special Agent with Immigration and Customs Enforcement (hereinafter "ICE"), United States Department of Homeland Security, Jackson, Mississippi, and have been so employed since April 1987. I am currently assigned to the financial investigations, commercial fraud and the work site enforcement programs. I have received training and have been assigned to conduct investigations of criminal violations of the United States Code as enumerated in Titles 8, 18, 19, 21, 22, 31 and various other federal statutes.

I submit this affidavit based on information known to me personally frm the investigation, as well as information obtained from others who have investigated the matter or have personal knowledge of the facts herein. This affidavit is being submitted in support of a Criminal Complaint for the business known as THE COUNTRY CLUB OF JACKSON (hereinafter "The Country Club") located at 345 St. Andrews Drive in Jackson, Mississippi, and as such does not include all the information known to me as part of this investigation, but only information sufficient to establish probable cause for the issuance of a Criminal Complaint against The Country Club for violations of Title 8, United States Code, Section 1324a(a)2, and Title 42, United States Code, Section 408(a)(6).

On May 19, 2006, the Social Security Administration sent a letter to The Country Club advising The Country Club that 43 names and social security numbers of employees that The Country Club had reported on submitted W-2s for tax year 2005 did not agree with the Social Security Administration's records. The letter from the Social Security Administration sought a response from The Country Club within 60 days. The Country Club did not respond to the Social Security Administration.

On June 1, 2006, The Country Club sent letters to numerous employees explaining that the social security number that each individual had provided did not match that individual's name according to the Social Security Administration. According to The Country Club, no employees responded to the letter.

On August 15, 2006, ICE conducted an immigration outreach presentation for the staff of The Country Club. During this presentation, your affiant discussed the federal laws for employing non-United States Citizens, the methods of verifying identification documents of lawfully-admitted aliens, the employer's guide to I-9 Forms and frequently asked questions by employers of non-United States Citizens. In addition, your affiant gave the staff for The Country Club materials and literature on these subjects. Thereafter, your affiant asked and was granted permission to review the employee files and I-9 Forms for The Country Club's employees.

A review of The Country Club's employee files and I-9 Forms by your affiant found that thirty-seven (37) individuals who had been hired at various times by The

Country Club had used counterfeit Lawful Permanent Resident Cards (I-551 Cards) and counterfeit Social Security Cards to obtain employment at The Country Club. When your affiant later compared these employee files and I-9 Forms with The Country Club's payroll records from August 13, 2006, it was revealed that thirty-three (33) of these thirty-seven (37) undocumented aliens were employed on August 13, 2006. Your affiant advised The Country Club's General Manager Charles Burckel and his staff that the employees identified by ICE as undocumented aliens from the employee files and I-9 Forms could no longer be legally employed by The Country Club. Burckel then advised your affiant that these employees would be terminated immediately.

Your affiant also found that numerous I-9 Forms were incomplete or altogether missing from employee files. Your affiant and staff for The Country Club scheduled a return visit by your affiant to The Country Club for August 30, 2006 to review The Country Club's progress in addressing these incomplete and absent I-9 Forms.

On August 30, 2006, your affiant revisited The Country Club. Your affiant met with Burckel in person at The Country Club and they were joined by The Country Club Board of Governors' attorney Ken Rogers via telephone. At that time, Rogers advised your affiant that twenty-seven (27) employees previously identified by ICE on August 15, 2006, as ineligible for employment were continuing to be employed. It was stated that the twenty-seven (27) employees were necessary for the operation of The Country Club. Further, your affiant was informed by Burckel that The Country Club had sent a letter dated August 18, 2006, written in English and Spanish, to each of the twenty-seven (27) employees to advise them that ICE and The Country Club had determined that the immigration documents and Social Security Cards presented by the employees to gain employment were not valid. The letter stated that the employees were to be given forty-five (45) days from the date of the letter (deadline of October 2, 2006) to produce valid immigration documentation or be terminated.

Your affiant was advised by Burckel that if The Country Club fired all of the workers, it would put an undue hardship on the Club. Burckel further stated that the sensitive nature of the golf greens required the special skills of the foreign workers and that the foreign workers could not be easily replaced by local workers. Burckel explained that The Country Club's decision to give workers forty-five (45) days would allow The Country Club to continue to maintain and use the golf course until the weather cools in October when grass would need less attention from workers. Burckel also related that it would be hard to replace the foreign workers in the dining facility.

During this meeting, Rogers also asserted that The Country Club's course of action was consistent with proposed legislation then pending before Congress. Your affiant advised Rogers that proposed legislation does not supersede current law, and that The Country Club was in violation of current federal law, specifically Section 1324 of Title 8, United States Code.

On September 8, 2006, United States Magistrate Judge Linda R. Anderson signed a "Blackie's Warrant" submitted by the United States Attorney's Office for the Southern

District of Mississippi. The warrant authorized ICE to enter The Country Club in order to search for aliens who were suspected of being in the United States without lawful authority.

On September 13, 2006, ICE executed the Blackie's Warrant on The Country Club, by serving a copy on Burckel. As a result, eighteen (18) undocumented aliens employed by The Country Club were detained for investigation by ICE. All 18 individuals were found to be unlawfully in the United States and all eighteen (18) had used counterfeit I-551 Cards and Social Security Cards bearing numbers assigned to others in order to gain employment and receive payment. All eighteen (18) individuals arrested by ICE on this date were part of the group of thirty-seven (37) undocumented aliens previously identified by ICE and presented to The Country Club for termination during ICE's visit to The Country Club on August 15, 2006. These eighteen (18) undocumented aliens were administratively processed and placed into removal proceedings by ICE.

Also on September 13, 2006, your affiant conducted a review of all I-9 Forms and employee files of The Country Club pursuant to a Federal Grand Jury subpoena. In addition to the thirty-seven (37) undocumented aliens listed on I-9 Forms and/or in employee files previously discovered by your affiant on August 15, 2006, your affiant discovered an additional eleven (11) I-9 Forms listing undocumented aliens with no corresponding employee files or identification documents. Also, your affiant found another I-9 Form for an undocumented alien named Manuel Hernandez, who had been hired by The Country Club using fraudulent documents on August 22, 2006, only one week after your affiant gave an immigration outreach and education presentation to The Country Club on August 15, 2006.

In summary, the names of forty-nine (49) undocumented aliens were discovered on September 13, 2006, through employee files and/or I-9 Forms spanning a hiring period from May 2000 to August 2006. Using these documents, your affiant compared the names of these forty-nine (49) undocumented aliens to the payroll records of The Country Club for September 10, 2006, and discovered that thirty (30) undocumented aliens were listed as being employed on September 10, 2006. Your affiant gave his complete list of all names of undocumented aliens to Stanley Reedy, Greens Superintendent for The Country Club, and Reedy was advised by your affiant that these individuals could no longer work for The Country Club as of that day. Your affiant asked Reedy to give the list to Burckel.

Based upon the preceding facts, there is probable cause to believe that The COUNTRY CLUB OF JACKSON did knowingly hire and continue to employ illegal aliens knowing such aliens were unauthorized aliens with respect to such employment, in violation of Title 8, United States Code, Section 1324a(a)(2), and willfully, knowingly and with intent to deceive the Social Security Administration as to the identity of another person, furnishing or causing to be furnished false information to the Commissioner of Social Security with respect to information required by the Commissioner of Social Security in connection with the establishment and maintenance of the records, in

violation of Title 42, United States Code, Section 408(a)(6).

*Stephen E. Cole*
Stephen E. Cole
Special Agent
Immigration and Customs Enforcement


Subscribed to me this  6th  day of February, 2008

*Linda R. Anderson*
Linda R. Anderson
United States Magistrate Judge